UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SCOTT MACARTHUR,<br><br>    Plaintiff,<br><br>v.<br><br>BILLY LAMB, et al.,<br><br>    Defendants. | Case No. 1:17-cv-00027<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Newbern |

To:  The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

This matter has been referred to the Magistrate Judge for a report and recommendation on all dispositive motions. (Doc. No. 4.) Now pending are motions for summary judgment filed by Defendants Sabrina Patterson and Richard Phillips (Doc. No. 36) and by Defendant Felicia McGee (Doc. No. 43). Plaintiff Scott MacArthur has not responded to either motion. For the reasons below, the undersigned RECOMMENDS that Defendants' motions for summary judgment be GRANTED.

## I. Background

### A. Factual History[1]

During the time of the events at issue in this lawsuit, Plaintiff Scott MacArthur was incarcerated at the Marshall County Jail (MCJ) in Lewisburg, Tennessee.[2] (Doc. No. 1, PageID# 6.) Defendant Sabrina Patterson was the Jail Administrator of the MCJ (Doc. No. 39-1, PageID# 154, ¶ 1) and Defendant Richard Phillips was the Assistant Jail Administrator. (Doc. No. 39-20, PageID# 226, ¶ 1.) Defendant Felicia McGee was employed as a nurse and Medical Team Administrator by Southern Health Partners, a private company that contracts with MCJ to provide medical services. (Doc. No. 45, PageID# 270, ¶¶ 4, 5.)

#### 1. MacArthur's Allegations

The allegations of MacArthur's complaint center on his claim that he did not receive proper accommodation of physical limitations caused by an impairment of his left leg when he was incarcerated at the MCJ. (Doc. No. 1, PageID# 6–7.) MacArthur's allegations begin with Defendants' failure to place him in an accessible cell or in the MCJ's medical unit upon booking, instead placing him in the non-accessible Pod 22, and Patterson and Phillips' subsequent failure to provide him with an accessible shower chair. (Doc. No. 1, PageID# 6.) MacArthur states that he has a medical authorization which provides that he cannot go up or down stairs without extreme difficulty and that Defendants were aware of this fact. (*Id.*) MacArthur states that he wears a brace on his left leg and, when he was admitted to the MCJ, was allowed to wear his own sneaker on his

---

[1] These facts are taken primarily from Defendants' statements of undisputed material facts and related documents (Doc. Nos. 38, 39-1, 39-5, 39-10, 39-14, 39-15, 39-16, 39-20, 45) and MacArthur's complaint (Doc. No. 1).

[2] MacArthur is now incarcerated at the Morgan County Correctional Complex. (Doc. No. 55, PageID# 388.)

left foot and a jail-issued flip-flop only on his right foot. (*Id.* at PageID# 7.) He states that this shows Defendants' knowledge that he suffered from a medical condition. (*Id.*)

MacArthur claims that, on March 7, 2017, he slipped getting out of the shower, twisting his right knee and tearing off a toenail. (*Id.* at PageID# 6.) He states that he was taken to the emergency room and told to rest his knee and see an orthopedic doctor for further treatment. (*Id.*) MacArthur states that he "tore [his] ACL and MCL ligaments" and now uses a walker and a wheelchair. (*Id.* at PageID# 7.) MacArthur claims that there was a 12-inch step up to the shower in Pod 22 and that his being required to use that shower "put [him] in a careless and reckless harm's way." (*Id.*) He states that, on March 9, 2017, he was moved to a cell "farthest from the shower and phone." (*Id.*) After complaining, he was moved back to the cell closest to the shower and phone and then to his original cell with its own shower. (*Id.*) MacArthur acknowledges that Patterson and Phillips installed a handrail in the shower "but put it in the wrong spot." (*Id.*) He states that he asked for a shower chair but did not receive one and "had to crawl into [the] shower and sit on a green trash can" to bathe. (*Id.*)

**2. Defendants' Statements of Undisputed Material Facts**

Patterson and Phillips state that, when MacArthur arrived at the MCJ on December 26, 2016, they noticed that he wore a leg brace and had a "slight limp" and placed him in Pod 22, a "non-handicapped equipped Observation Pod" that is close to the medical office and typically used for observing inmates with medical issues. (Doc. No. 38, PageID# 140, ¶ 1; Doc. No. 39-1, PageID# 154, ¶ 3; Doc. No. 39-20, PageID# 226, ¶ 2; Doc. No. 45, PageID# 271, ¶ 9.) Patterson and Phillips also allowed MacArthur to wear the sneaker and brace he arrived in on his left leg and provided a standard-issue jail slipper for his right. (Doc. No. 38, PageID# 141, ¶ 2.) Patterson and

3

Phillips, however, had no knowledge as to whether MacArthur suffered from "an actual medical disability." (Doc. No. 38, PageID# 141, ¶ 4.)

On December 28, 2016, MacArthur reported to Nurse McGee that he experienced continuous leg pain and was dissatisfied with his assignment to Pod 22 because of this condition. (Doc. No. 38, PageID# 141, ¶ 3; Doc. No. 45, PageID# 272–73, ¶ 13, 15.) McGee prescribed acetaminophen for the pain and recommended to the jail administration that MacArthur be allowed to wear sneakers on both feet. (Doc. No. 44, PageID# 248, 250.) She also informed MacArthur that she had no authority to change his cell assignment and advised him to address that issue with the jail administration. (Doc. No. 45, PageID# 273, 277, ¶ 13, 15, 25.) Patterson and Phillips provided MacArthur with a sneaker for his right foot and maintained his assignment in Pod 22. (Doc. No. 38, PageID# 142, ¶ 8; Doc. No. 45, PageID# 277, ¶ 25.)

Defendants acknowledge MacArthur's claims that, on March 7, 2017, he tripped over the lip of the Pod 22 shower stall as he was exiting it, causing him to twist his knee and tear off a toenail and prompting McGee to take him to the emergency room. (Doc. No. 1, PageID# 6; Doc. No. 38, PageID# 143, ¶ 11–12; Doc. No. 39-10, PageID# 187; Doc. No. 45, PageID# 277–78, ¶ 28.) However, Defendants state that video footage taken from a surveillance camera in Pod 22 on March 7, 2017, shows that MacArthur did not fall while exiting the shower and, instead, "walked towards his bunk, using the same gait as before [the shower]." (Doc. No. 38, PageID# 143-44, ¶¶ 14, 16; Doc. No. 45, PageID# 278, ¶¶ 29, 32–33.) MacArthur proceeded to "pick at the toenails on his right foot" before calling for assistance, then changed clothes "without any apparent difficulty." (Doc. No. 38, PageID# 144–45, ¶¶ 18, 21, 23; Doc. No. 45, PageID# 278–81, ¶¶ 34, 37, 41.)

4

Although MacArthur states that the alleged fall caused him to tear the anterior cruciate ligament (ACL) and the medial collateral ligament (MCL) in his right knee (Doc. No. 1, PageID# 6), Defendants state that medical records from after the incident do not support that conclusion. An anterior drawer test performed on his right knee indicated "no sign of a torn ACL." (Doc. No. 45, PageID# 286–87, ¶ 56.) Medical records also state that x-rays of MacArthur's knee taken after the alleged fall show only "degenerative changes without evidence of fracture" and not a torn ACL or MCL. (Doc. No. 38, PageID# 146, ¶ 25; Doc. No. 45, PageID# 282, ¶ 42.) Dr. Andrew Panos, MacArthur's attending physician at the Marshall Medical Center, diagnosed MacArthur as having a "right knee sprain" and prescribed "rest with leg elevated." (Doc. No. 45, PageID# 282, ¶ 42.)

On March 8, 2017, Patterson and Phillips moved MacArthur to cell E-4, a medical cell located closest to the restroom where he was monitored "every 30 minutes, given ice packs as needed, and restricted to showers only with supervision." (Doc. No. 38, PageID# 147, ¶¶ 29–30; Doc. No. 45, PageID# 282–83, ¶¶ 44–45.) Dissatisfied with his cell placement, MacArthur filed a grievance complaining that cell E-4 was burdensome given its distance from the shower and requested a transfer to cell E-1. (Doc. No. 1, PageID# 7; Doc. No. 39-14, PageID# 198–99.) Patterson and Philips initially denied that request because cell E-1 was occupied. (Doc. No. 39-1, PageID# 158, ¶ 21; Doc. No. 45, PageID# 284, ¶ 49.) Once it became available, Patterson and Phillips transferred MacArthur to cell E-1. (Doc. No. 38, PageID# 148, ¶ 32; Doc. No. 45, PageID# 285, ¶ 51.) On March 16, 2017, Patterson and Phillips transferred MacArthur back to Pod 22, where they had installed a handrail in the shower. (Doc. No. 38, PageID# 148, ¶ 33.) MacArthur agreed in writing that his showers would be supervised and that an officer would bring a shower chair to MacArthur when requested and "as time allows." (Doc. No. 38, PageID# 148, ¶ 34–35; Doc. No. 39-15, PageID# 200; Doc. No. 45, PageID# 286, ¶ 55.)

### B. Procedural History

MacArthur filed this action on March 24, 2017, bringing claims against Patterson, Phillips, McGee, and Sheriff Billy Lamb. (Doc. No. 1, PageID# 2–3.) On April 5, 2017, the Court granted MacArthur's application to proceed *in forma pauperis*. (Doc. No. 2; Doc. No. 4, PageID# 20.) The Court construed MacArthur's complaint as alleging claims of deliberate indifference to his medical needs in violation of the Eighth Amendment and found that he had alleged a colorable claim for relief against Patterson, Phillips, and McGee.[3] (Doc. No. 4, PageID# 22.) The Court dismissed MacArthur's claims against Lamb, finding that Lamb had no "part in determining what cell [MacArthur] would be assigned to or whether he would receive specific care and accommodation for his disability." (*Id.* at PageID# 22–23.)

Defendants Patterson and Phillips filed their motion for summary judgment on February 8, 2018 (Doc. No. 36), supported by a memorandum of law (Doc. No. 37), a statement of undisputed material facts (Doc. No. 38), and their affidavits. (Doc. Nos. 39-1, 39-20.) McGee filed her motion for summary judgment on February 15, 2018 (Doc. No. 43), accompanied by a memorandum of law (Doc. No. 44) and a statement of undisputed facts. (Doc. No. 45.) MacArthur did not respond to Defendants' motions for summary judgment. (Doc. No. 39.)

On April 12, 2018, the Court ordered MacArthur to show cause within thirty days why judgment should not be entered in Defendants' favor or why the action be dismissed for MacArthur's failure to prosecute his claims. (Doc. No. 49, PageID# 372.) On May 2, 2018,

---

[3] In the body of his complaint, MacArthur claims violations of the Americans with Disabilities Act, 42 U.S.C. § 12101. (Doc. No. 1, PageID# 6.) However, the Court has construed this action as raising only an Eighth Amendment violation. (Doc. No. 4, PageID# 20.) No party has objected to that construction and the Court analyzes MacArthur's claims as arising under the Eighth Amendment at summary judgment. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (holding that the liberal construction afforded pro se pleadings may require "active interpretation" of a plaintiff's claims "to encompass any allegation stating federal relief").

MacArthur filed a motion requesting an extension to June 1, 2018, to respond to Defendants' motions (Doc. No. 50, PageID# 375), which the Court granted. (Doc. No. 54.) MacArthur has not made any further filings.

## II.     Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stiles*, 819 F.3d at 848. A court must not weigh the evidence and determine the truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to judgment as a matter of law. *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there

7

must be evidence on which the jury could reasonably find for the [nonmoving party].'" *St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. *Anderson,* 477 U.S. at 249–52.

This Court's Local Rules 7.01(b) and 56.01(g) govern responses to motions generally and statements of material facts filed with motions for summary judgment, respectively. Local Rule 7.01(b) states, in pertinent part, that "[f]ailure to file a timely response [to a motion] shall indicate that there is no opposition to the motion." M.D. Tenn. Rule 7.01(b) (response). Regarding responses to statements of material facts in the summary judgment context, Local Rule 56.01(g) provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." M.D. Tenn. Rule 56.01(g) (failure to respond). However, "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Evans v. Plummer*, No. 16-3826, 2017 WL 1400495, at *9 (6th Cir. Apr. 19, 2017) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). The court must instead examine the motion to determine whether the movant has discharged its burden of demonstrating the absence of a genuine issue of material fact. *Id.*

### III. Analysis

To succeed in a 42 U.S.C. § 1983 action, "a plaintiff must prove the following two elements: (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 534 (1981)). It is undisputed that

8

Defendants were acting under the color of law at all times relevant to this action. (Doc. No. 37, PageID# 130; Doc. No. 44, PageID# 255–56.) The question at summary judgment is, therefore, whether a genuine issue of material fact exists that Defendants' conduct deprived MacArthur of a legal right.[4] *Bloch*, 156 F.3d at 677.

A prisoner's Eighth Amendment rights are violated when "prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The deliberate indifference analysis contains both an objective component and a subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A plaintiff must prove both to succeed.

The objective component of an Eighth Amendment claim requires MacArthur to demonstrate that his medical need was "sufficiently serious." *Richmond v. Huq*, 872 F.3d 355, 364

---

[4] Although MacArthur's complaint states that he has sued Defendants in both their individual and official capacities (Doc. No. 1, PageID# 2), Defendants did not argue against the official capacity claims. (Doc. No. 36, PageID# 118; Doc. No. 43, PageID# 242–43.) To the extent that MacArthur intended to sue Defendants in their official capacities, all Defendants are entitled to summary judgment on those claims. An official capacity suit against a county official (like Patterson and Phillips) or an employee of a county contractor (like McGee) is treated as a suit against the county or the contractor itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).To establish a § 1983 claim against either entity, MacArthur has to prove that the entity had a policy or custom that resulted in a violation of his constitutional rights. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (explaining that a government contractor is liable for its policy or customs that result in a constitutional violation, but not for the policies or customs of the municipality); *Graham ex resl. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (finding that municipal liability under § 1983 only attaches when the government's policy or custom is the source of the constitutional injury) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). MacArthur's complaint contains no allegations regarding a policy or custom of either the MCJ or Southern Health Partners; in fact, other than MacArthur's initial reference to his incarceration at the MCJ, he makes no allegations against either entity. Thus, to the extent MacArthur sued Defendants in their official capacities, they are all entitled to summary judgment on those claims.

9

(6th Cir. 2017) (citing *Farmer*, 511 U.S. at 834). The Sixth Circuit recognizes two theories under which a plaintiff can meet this standard. *See Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017). First, a plaintiff can show that his condition was objectively serious "if it is 'one that has been diagnosed by a physician as mandating treatment.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Second, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,'" the objective component is met. *Id.* at 899-900 (quoting *Gaudreault*, 923 F.2d at 208). MacArthur may satisfy the subjective component by showing that Defendants were aware of but disregarded an excessive risk to his health and safety. *Farmer*, 511 U.S. at 837.

Because MacArthur did not respond to Defendants' statements of undisputed facts, those facts are taken as true for the purposes of summary judgment. M.D. Tenn. R. 56.01(g).

### A. Objective Component

MacArthur asserts that Defendants were deliberately indifferent to his medical needs before and after his alleged accident. The Court therefore addresses those arguments separately.

#### 1. Pre-Accident

MacArthur alleges that, before his fall, he suffered from "handicap limitations . . . [that caused him] extreme difficulties" going up and down steps. (Doc. No. 1, PageID# 6.) Defendants Patterson, Phillips, and McGee argue that MacArthur did not suffer "from a sufficiently serious medical need at any relevant time." (Doc. No. 37, PageID# 134–35; Doc. No. 44, PageID# 260.) In order to amount to a constitutional violation, a prisoner's medical needs must "'involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem.'" *Blackmore*, 390 F.3d at 897 (quoting *Hill v. Dekalb Reg'l Youth Detention*

10

*Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994)) (finding a prisoner's condition sufficiently serious where he "exhibited obvious manifestations of pain and injury" that had the potential to create a "substantial risk of serious harm"); *see also Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (citing *Blackmore*, 390 F.3d at 897) (finding that "superficial, nonserious physical conditions" do not amount to a sufficiently serious medical need under § 1983).

Here, the record does not contain evidence on which a reasonable jury could find that MacArthur's pre-accident medical condition was sufficiently serious. MacArthur was booked into the MCJ wearing a leg brace due to an unspecified injury. (Doc. No. 38, PageID# 141, ¶¶ 2, 4; Doc. No. 39-1, Page ID# 154, ¶¶ 2–3; Doc. No. 45, PageID# 272, ¶ 11.) The record reflects that MacArthur did exhibit a "slight limp" upon arrival at the MCJ; however, both Patterson and Phillips noted in their affidavits that the limp did not "affect his ability to ambulate." (Doc. No. 39-1, PageID# 155, ¶ 7; Doc. No. 39-20, PageID# 226, ¶ 2.) As McGee argues, "the medical conditions identified by Plaintiff at booking . . . do not facially amount to either life-threatening medical conditions or conditions that warrant immediate treatment." (Doc. No. 44, PageID# 258.) In fact, Patterson noted in her affidavit that MacArthur had "been incarcerated with our facility on prior occasions . . . [and she had] never known or observed [MacArthur's limp] to affect his ability to ambulate." (Doc. No. 39-1, Page ID# 155, ¶ 7.) Defendants' separate observations support the conclusion that MacArthur's condition before his alleged fall was "nonserious" for purposes of an Eighth Amendment claim. *Id.* at 897; *Burgess*, 735 F.3d at 477.

The record also supports a finding that MacArthur's condition was not "'one that has been diagnosed by a physician as mandating treatment'" when he arrived at the MCJ. *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault*, 923 F.2d at 208). Although MacArthur wore a leg brace, there was nothing in his medical file indicating that he required ongoing medical attention, and

11

MacArthur was "reasonably satisfied" with the acetaminophen McGee provided him to alleviate any leg pain. (Doc. No. 45, PageID# 272–73, ¶ 11, 13.) Again, the record shows no genuine factual question that MacArthur's pre-accident medical condition was "sufficiently serious" to satisfy the objective component of an Eighth Amendment claim. *See Mattox*, 851 F.3d at 598.

### 2. Post-Accident

Nor does the evidence presented establish a question of fact that MacArthur's medical needs after his alleged accident were sufficiently serious. MacArthur alleges that he "slip[ped] and twist[ed]" his right knee coming out of a non-accessible shower and tore his ACL and MCL in his right leg. (Doc. No. 1, PageID# 6.) Defendants, however, have offered evidence to show that MacArthur "did not trip, slip, twist his knee, or catch his foot on the shower lip . . . [and] was able to freely move about his cell and walk without any apparent difficulty after exiting the shower." (Doc. No. 37, PageID# 134; Doc. No. 44, PageID# 259.) Surveillance footage from a camera within MacArthur's cell revealed that MacArthur did not fall coming out of the shower and continued to walk "using the same gait as before [the shower]." (Doc. No. 38, PageID# 143–45, ¶¶ 14, 16, 21; Doc. No. 45, PageID# 278–81, ¶¶ 29, 32–33.) MacArthur then picked at his toenails before calling officials to report his accident and displayed a limp only after MCJ authorities arrived. (Doc. No. 38 Page ID# 144–45, ¶¶ 18, 23; Doc. No. 45, PageID# 279–81, ¶¶ 34, 37, 41.) Indeed, x-rays taken from the Marshall Medical Center revealed that MacArthur was only suffering from "degenerative changes without evidence of fracture" and not the ligament tears that he alleges. (Doc. No. 38, PageID# 146, ¶ 25; Doc. No. 45, PageID# 282, ¶ 42.) Instead, MacArthur was diagnosed as having a sprained right knee. (Doc. No. 45, PageID# 282, ¶ 42.)

MacArthur has offered nothing to challenge Defendants' evidence that he exited the shower without difficulty, walked to his bunk in his normal gait, and exhibited a limp only after

12

officials arrived. Further, after MacArthur's injury, Dr. Panos did not prescribe any medical treatment other than to "rest with his leg elevated for several days." (Doc. No. 45, PageID# 282, ¶ 42.) Again, there is no evidence in the record from which a reasonable juror could conclude that MacArthur suffered from a sufficiently serious injury before or after his alleged fall. *See Blackmore*, 390 F.3d at 897 (quoting *Gaudreault*, 923 F.2d at 208).

### B. Subjective Component

The subjective component of MacArthur's deliberate indifference claim requires a showing that Patterson, Phillips, and McGee "knew of and disregarded an excessive risk" to MacArthur's health and safety. *Farmer*, 511 U.S. at 837. All Defendants, in other words, "must both be aware of the facts from which the inferences could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Id*; *see also Spears v. Ruth*, 539 F.3d 249, 254 (6th Cir. 2009). The Sixth Circuit has held that "prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Comstock*, 273 F.3d at 702; *see also Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (finding that even "relatively short periods of delay or neglect [of treatment]" on behalf of prison officials may be construed as deliberate indifference). In analyzing a deliberate indifference claim, the subjective component must be assessed for each defendant individually. *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008); *see also Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) ("The evidence must show that the specific individual was aware of facts from which he or she could infer a substantial risk of serious harm").

### 1. Patterson

#### a. Pre-Accident

MacArthur alleges that Patterson consciously placed MacArthur in "harm's way" by assigning him to a non-medical unit, denying him a shower chair, and allowing him only to wear one shoe. (Doc. No. 1, PageID# 6–7.) However, the evidence presented at summary judgment shows that Patterson was not aware that these conditions would create a substantial risk of harm to MacArthur. *Farmer*, 511 U.S. at 837. Patterson admits that she was aware of MacArthur's leg brace and his "slight limp." (Doc. No. 38, PageID# 141, ¶ 2; Doc. No. 39-1, PageID# 154–55, ¶¶ 3, 7.) Patterson, however, states that "MacArthur has been incarcerated with our facility on prior occasions … [and she has] never known or observed [MacArthur's limp] to affect his ability to ambulate," even in and out of the shower. (Doc. No. 37, PageID# 134; Doc. No. 39-1, Page ID# 155, ¶ 7.) Further, despite her history with MacArthur, Patterson disclaims "any knowledge as to an actual medical disability." (Doc. No. 38, PageID# 141, ¶ 4; Doc. No. 39-1, PageID# 155, ¶ 7.) Nor does the record support the conclusion that Patterson displayed deliberate indifference to MacArthur's need for an additional shoe. Patterson was informed by jail medical staff that, without a shoe for each foot, MacArthur was at risk of falling. (Doc. No. 38, PageID# 142, ¶ 8; Doc. No. 39-1, PageID# 156, ¶ 12.) But, even if that risk were found to be "substantial," Patterson did not disregard it. She promptly complied with the recommendation of the jail medical staff that MacArthur be allowed to wear sneakers on both feet. (Doc. No. 39-1, PageID# 156, ¶ 12; Doc. No. 45, PageID# 277, ¶ 25.)

Patterson has offered evidence sufficient to establish that she was not aware that her actions would subject MacArthur to a risk of harm, and MacArthur has offered no evidence to rebut that

14

conclusion. *Comstock*, 273 F.3d at 702, 711; (Doc. No. 38, PageID# 141, ¶ 4; Doc. No. 39-1, PageID# 155, ¶ 7.) There is no genuine issue of fact for trial on this question.

### b. Post-Accident

Similarly, the evidence is insufficient to establish that Patterson was aware of a substantial risk of harm to MacArthur after his fall. MacArthur claims he tore the ACL and MCL in his right knee after he fell. (Doc. No. 1, PageID# 6.) Yet MacArthur's post-fall emergency room records do not corroborate that claim and Patterson states that she was never aware of any such injuries. (Doc. No. 38, PageID# 147, ¶ 28; Doc No. 39-1, PageID# 157, ¶ 15.) MacArthur's medical records state that he was experiencing "degenerative changes without evidence of fracture," and the jail physician's only instruction for MacArthur was to keep his right leg elevated when resting for the following three to four days. (Doc. No. 37, PageID# 135; Doc. No. 38, PageID# 146, ¶ 27; Doc. No. 39-1, PageID# 157, ¶ 15.) There is no evidence in the record to contradict this proof, and no basis on which to find a genuine question that Patterson had reason to believe that MacArthur's knee injury posed a substantial risk of harm to his health and safety. (*Id*.)

Even if Patterson believed MacArthur's knee injury did present such a risk, Patterson did not disregard it. MacArthur alleges that, after his fall, Patterson placed him in cell E-4, a medical pod, which was "farthest from the shower" and "farthest from everything else." (Doc. No. 1, PageID# 7; Doc. No. 39-14, PageID# 198–99.) However, the medical cell closest to the shower, cell E-1, was occupied when MacArthur was transferred to cell E-4. (Doc. No. 39-1, PageID# 158–59, ¶ 21.) Patterson reasoned that cell E-4 was "closer to the toilet," and MacArthur "was allowed to use a wheelchair when he needed to go take a shower." (Doc. No. 39-1, PageID# 158, ¶ 21.) When cell E-1 became available, Patterson transferred MacArthur to it. (Doc. No. 38, PageID# 148, ¶ 32; Doc. No. 39-1, PageID# 158–59, ¶ 21.) Further, Patterson ordered that MacArthur be

observed "every thirty minutes, given an ice pack as needed, and was only to take showers while supervised." (Doc. No. 38, PageID# 147, ¶¶ 29–30; Doc. No. 39-1, PageID# 158, ¶ 18.)

MacArthur further alleges that, after he was transferred from E-1 back to his original cell in Pod 22, he was not brought a shower chair and was forced to "crawl into [the] shower and sit on [a] green trash can to take a shower." (Doc. No. 1, PageID# 7.) MacArthur, however, signed an agreement with Patterson and Phillips after he was transferred back to Pod 22 which stated that "[a]n officer will bring such chair to the cell as time allows." (Doc. No. 38, PageID# 148, ¶ 35.) No reasonable juror could conclude on this record that Patterson disregarded an excessive risk to MacArthur after his "fall," and therefore Patterson is entitled to summary judgment on MacArthur's post-fall deliberate indifference claim. *See Farmer*, 511 U.S. at 837.

### 2. Phillips

#### a. Pre-Accident

The evidence presented at summary judgment demonstrates that Phillips was not aware that placing MacArthur in a non-medical cell without a shower chair or a sneaker for his right foot constituted a substantial risk to MacArthur's health and safety. *See Farmer*, 511 U.S. at 837. MacArthur alleges that he wrote directly to Phillips requesting both a shower chair and placement in a medical pod due to his disability and that Phillips denied his request. (Doc. No. 1, PageID# 6.) Phillips argues that he denied the request because MacArthur "exhibited no sign of having difficulty getting around Pod 22 or a need to be placed in a Medical/Lockdown Pod." (Doc. No. 39-20; PageID# 226–27, ¶ 3.) Like Patterson, Phillips notes that MacArthur had been incarcerated in the MCJ before and that, although MacArthur had "claimed a disability on prior occasions," Phillips was "unaware of an actual [medical] disability." (Doc. No. 38, PageID# 141, ¶ 4; Doc. No. 39-20, PageID# 226, ¶ 2.) Further, Phillips had "never known or observed [MacArthur's limp]

16

to affect his ability to walk or get around in any cell." (Doc. No. 39-20; PageID# 226, ¶ 2.) Finally, although MacArthur was initially provided a sneaker for his left foot only, Patterson and Phillips provided MacArthur with a sneaker for his right foot after being advised to do so by medical staff. (Doc. No. 38, PageID# 142, ¶ 8; Doc. No. 39-20; PageID# 226–27, ¶ 3.) Even if there was a substantial risk of harm to MacArthur's health and safety, Phillips has shown that he did not disregard a substantial risk of harm to MacArthur prior to his alleged fall. *See Id*. MacArthur has not disputed that evidence.

      **b.**      **Post-Accident**

The evidence exhibited at summary judgment is also insufficient to create a question of fact that Phillips was aware of and disregarded a substantial risk of harm to MacArthur after his accident. *See Farmer*, 511 U.S. at 837. Although MacArthur alleges that he tore his ACL and MCL during his fall, his medical records show otherwise, and Phillips states that he had no knowledge of such injuries. (Doc. No. 37, PageID# 123; Doc. No. 39-20, PageID# 227, ¶ 6.) There is nothing in the record to support the conclusion that Phillips was aware that MacArthur faced a substantial risk of harm after his fall. But even if that were not the case, Phillips's conduct does not display a disregard for any risk that MacArthur did face. *See Farmer*, 511 U.S. at 837. Phillips, with Patterson, placed MacArthur in a medical pod, provided him with a walker and a wheelchair, and ordered that MacArthur be observed every thirty minutes and take only supervised showers. (Doc. No. 1, PageID# 7; Doc. No. 38, PageID# 147, ¶¶ 29–30; Doc. No. 39-1, PageID# 158, ¶ 18.) Before MacArthur was transferred back to his original cell, Phillips ordered the installation of a handrail in that cell's shower. (Doc. No. 38, PageID# 148, ¶ 33; Doc. No. 39-20, PageID# 227, ¶ 5.) No reasonable juror could conclude that Phillips disregarded an excessive risk to MacArthur

17

after his alleged accident. *See Farmer*, 511 U.S. at 837. Phillips is therefore entitled to summary judgment on MacArthur's post-fall deliberate indifference claims. *See Id*.

### 3. McGee

#### a. Pre-Accident

MacArthur alleges that McGee actively placed him in "harm's way" by allowing him to be placed and remain within Pod 22 despite knowing that MacArthur had "serious medical [handicap] limitations." (Doc. No. 1, PageID# 7.) The evidence indicates that McGee was aware of an actual medical need. *See Farmer*, 511 U.S. at 837. Like Patterson and Phillips, McGee was aware of MacArthur's leg brace. (Doc. No. 45, PageID# 273, ¶ 14.) However, MacArthur also disclosed to McGee that he had "'drop foot' on his left leg, severe nerve damage in his back and left leg . . . dizziness due to muscle problems in his left leg . . . [and] arthritis in his knees." (Doc. No. 45, PageID# 273–74, ¶ 16.) MacArthur also told McGee that he "had been treated for mental health problems in the past." (Doc. No. 44, PageID# 248.) Nowhere within the record does McGee argue that she was unaware of MacArthur's medical needs. (Doc. No. 44, PageID# 248; Doc. No. 45, PageID# 273–74, ¶ 16.)

However, McGee did not disregard a substantial risk to MacArthur's health and safety. *See Farmer*, 511 U.S. at 837. MacArthur alleges that Nurse McGee did not place him in a medical pod, ignoring a risk to his well-being. (Doc. No. 1, PageID# 6–7.) McGee, however, states that she has no control over the assignment of inmates to their cells or the clothing inmates are given. (Doc. No. 44, PageID# 247; Doc. No. 45, PageID# 273, ¶ 15.) Further, as McGee emphasizes, she "was responsive to [MacArthur's] purported medical needs—even those that were plainly frivolous—at all times." (Doc. No. 44, PageID# 262.) For example, after receiving complaints from MacArthur regarding his cell assignment and clothing, McGee made a recommendation to

18

Patterson that MacArthur be allowed to wear a sneaker on his right foot rather than a jail slipper. (Doc. No. 45, PageID# 277, ¶ 25.) McGee also gave MacArthur acetaminophen to alleviate his pain. (Doc. No. 45, PageID# 272–73, ¶ 13.) Finally, McGee states that she addressed "sick call slips that had nothing to do with medical treatment," such as MacArthur's request to settle his father's estate. (Doc. No. 44 PageID# 262; Doc. No. 45, PageID# 275, ¶ 21.) McGee responded to all of MacArthur's needs and concerns and provided the treatment she deemed appropriate. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The record offers no dispute of fact as to whether she was deliberately indifferent to MacArthur's medical needs before his alleged accident. *See Farmer*, 511 U.S. at 837.

### b. Post-Accident

MacArthur does not mention McGee or her involvement in his post-accident allegations. (Doc. No. 1, PageID# 6–7.) However, to the extent that MacArthur asserts a post-accident deliberate indifference claim against McGee, McGee has demonstrated that she was not deliberately indifferent to MacArthur's medical needs. *See Farmer*, 511 U.S. at 837. Immediately after MacArthur first reported his alleged fall, it was McGee who "directed jail staff to transport [MacArthur] to the emergency room." (Doc. No. 45, PageID# 277–78, ¶ 28.) Following MacArthur's accident, "McGee ensured that [he] was getting sufficient ice for his knee and worked to move him to the medical pod, where he was kept under medical observation every thirty minutes." (Doc. No. 44, PageID# 262.) After Patterson and Phillips placed MacArthur in cell E-4, McGee responded to MacArthur's request that she "provide him with some bandages and antibiotic cream for his toenail." (Doc. No. 45, PageID# 284, ¶ 48.) McGee "responded in writing to every sick call slip [MacArthur] submitted and for every medical complaint that he made." (Doc. No. 45, PageID# 288, ¶ 64.) There is no question of fact that McGee did not actively disregard

19

MacArthur's medical needs and, instead, used what authority she had to satisfy MacArthur's requests. *See Farmer*, 511 U.S. at 837.

IV.     **Recommendation**

Based on the foregoing, the undersigned RECOMMENDS that Patterson and Phillips' motion for summary judgment (Doc. No. 36) and McGee's motion for summary judgment (Doc. No. 43) be GRANTED and that this action be DISMISSED with prejudice.[5]

All parties have fourteen days after being served with this report and recommendation in which to file any objections. A party opposing any objections filed has fourteen days after being served with a copy of the objections in which to file a response. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of further appeal of the matters disposed therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 30th day of July, 2018.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[5] Defendants also argue that MacArthur's claims should be dismissed as frivolous or malicious under the Prison Litigation Reform Act (PLRA) and that such a dismissal should count as a "strike" against MacArthur under 28 U.S.C. § 1997(g). (Doc. No. 44, PageID# 266; Doc. No. 37, PageID# 126–129.) Because Defendants are all entitled to summary judgment on MacArthur's claims, the Court need not consider Defendants' alternative basis for dismissal. *See Shye v. Melton*, No. 2:13-0113, 2014 WL 6873154, at *8 (M.D. Tenn. Dec. 3, 2014) (declining to find that entry of summary judgment in favor of defendants constitutes a "strike" under 28 U.S.C. § 1915(g)).